**BY'S CHARTERING SERVICE, INC.,**
**Plaintiff-Appellant,**

v.

**INTERSTATE INSURANCE**
**COMPANY,**
**Defendant-Appellee.**

**No. 75–1031.**

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1975.

Decided Nov. 3, 1975.

---

**22.** *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

Allan van Gestel, Boston, Mass., with whom Goodwin, Procter & Hoar, Boston, Mass., was on brief, for appellant.

Frank H. Handy, Jr., Boston, Mass., with whom Viola B. Kneeland and Kneeland, Splane, Kydd & Handy, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and THOMSEN,* Senior District Judge.

McENTEE, Circuit Judge.

This case deals with a disputed claim under a policy of hull insurance. The issues involved are relatively simple, and there is virtually no dispute between the parties concerning the basic facts.

On the morning of June 26, 1971, the yacht POSEIDON was operating in the waters of Muskeget Channel, south of Martha's Vineyard. The owner of the vessel, who was operating it at the time, observed heavy smoke coming from the exhaust and consequently idled the engine and went to check the engine room. There he noticed that the pan under the starboard engine was filled with oil. He turned off that engine and sailed to Hyannis on his port engine only. Upon inspection in port, a leak was discovered in a hose running from a filter to the engine, and a new hose was installed. When the engine was then started, it seized up and substantial repairs were necessary. A claim was made to the defendant insurer for the cost of these repairs and consequential damages. The insurer rejected the claim and plaintiff brought suit in state court. The case was removed to federal court and tried before the district judge sitting without

* Of the District of Maryland, sitting by designation.

a jury. The court found for the defendant, and this appeal followed. We affirm.

■ The linchpin in the court's reasoning was its finding that there was no causal connection between the damaged hose and the repairs which the engine subsequently required. This finding was based on the testimony of two expert witnesses who were the only experts who actually observed the disassembled parts of the engine shortly after the incident. It was their considered opinion that the damage to the engine was not the result of the broken hose and the consequent lack of lubricating oil and that there was no causal connection between the worn hose and the engine damage. Relying upon the opinion of these two experts and the facts which supported their opinion, the court held that the damage was the result of gradual wear and tear and was not the result either of a latent defect or of an accident.[1] It therefore found that the defendant was not liable on the policy.[2]

The district court had an adequate evidentiary basis for its findings, and our review of the record does not reveal that these findings were clearly erroneous. *See* Fed.R.Civ.P. 52(a).[3]

■ Appellant also argues that the wording of one of the pretrial stipulations agreed to by defendant constitutes an admission fatal to defendant's case and that it is bound by that admission. *See Moore-McCormack Lines, Inc. v. The Esso Camden*, 244 F.2d 198, 203 (2d Cir.), *cert. denied*, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 37 (1957). The stipulation in question states: "As a result of the accident occurring on June 26, 1971, it became necessary to completely overhaul and rebuild the starboard engine of the yacht Poseidon." We do not read this stipulation as a waiver by the defendant of his right to litigate the issues of proximate cause and scope of coverage. We view it rather as an elliptical manner of summarizing the chronology of the events relevant to this case; we understand the stipulation to mean that, after the incident at sea on June 26, 1971, repairs were necessary during the course of which it became apparent that a complete overhaul and rebuilding would be required.

*Affirmed.*

---

1. The policy in question contained an "Inchmaree" clause and covered damage attributable to latent defect or to accident. *See Saskatchewan Gov't Ins. Office v. Spot Pack, Inc.*, 242 F.2d 385, 391 n. 6 (5th Cir. 1957); *Ferrante v. Detroit Fire and Marine Ins. Co.*, 125 F.Supp. 621 (S.D.Cal.1954). *See generally* Tetreault, *The Hull Policy: The "Inchmaree" Clause*, 41 Tul.L.Rev. 325 (1967).

   The policy also contained a "perils of the sea" clause, but that does not provide coverage for ordinary wear and tear. *Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F.Supp. 163, 168–69 (E.D.Va.1974). *Cf. Reisman v. New Hampshire Fire Ins. Co.*, 312 F.2d 17 (5th Cir. 1963).

2. This was not an "all risks" policy, which would cover all losses from external causes unless specifically excluded. *See Northwestern Mut. Life Ins. Co. v. Linard*, 498 F.2d 556, 561 (2d Cir. 1974); *cf. Union Marine Ins. Co. v. Stone & Co.*, 15 F.2d 937, 939 (7th Cir. 1926).

3. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395; 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).